* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Adrian Phillips and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner and AFFIRMS with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the parties and subject matter of this case.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. The medical records of the treating physicians are admissible and are submitted with the Pretrial Agreement.
4. Plaintiff average weekly wage as of January 26, 2005 and January 6, 2006, is $894.00 and her compensation rate is $596.00.
 * * * * * * * * * * * ISSUES
1. Whether Plaintiff was injured by accident or specific traumatic incident on or about January 6, 2006 for I.C. No. 665672?
2. Whether Plaintiff was injured by accident on or about January 26, 2005 or in the alternative contracted an occupational disease due to chemical exposure for I.C. No. 665673?
3. To what benefits is Plaintiff entitled?
 (a) Temporary total;
 (b) Temporary partial
 (c) Permanent partial; and
 (d) Medical compensation.
If the claims are found compensable, whether the Defendants are entitled for a credit for payments made on short and long-term disability since the date of incident?
 * * * * * * * * * * * *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Phillips, plaintiff was 38 years old, born in January 1969, and lived in Lincolnton. She received a high school diploma and several certificates from various courses in machinery, welding, and electricity that she had taken through defendant-employer. Prior to her employment with defendant-employer, plaintiff worked as a Mode Injection Operator for Tech Vet Corporation for seven years. Plaintiff began working for defendant-employer as a Manufacturing Associate in June 1995, but from May 1996 through the date of her lower back injury in January 2006, she worked as a Finals Operator. As a Finals Operator, plaintiff inspected and tested the quality of fiber optic cable located on reels that varied in size. The reels of the cable varied in height from approximately 38 inches to 96 inches and weighed anywhere from 500 lbs. to 7,000 lbs. Plaintiff tested the quality of the fiber optic cable using various hand tools.
2. In January of 2005, defendant-employer hired an outside company to resurface the floors of its plant. On January 26, 2005, plaintiff was exposed to various fumes and dust particles when the flooring company was removing the old, painted flooring. Following the exposure to the dust and fumes, plaintiff's throat began to hurt and she also began to suffer from a headache and nausea.
3. In February and March 2005 following her exposure to the various fumes and dust particles, plaintiff visited her family doctor, Dr. Bradley of Cherryville Family Care and Dr. Borresen of Mecklenburg Neurological Associates. Dr. Borresen believed that toxic exposure *Page 4 
was unlikely. Likewise, Dr. Bradley was not able to opine whether plaintiff's exposure to the fumes and dust particles at work caused her symptoms and disability.
4. On Friday afternoon January 6, 2006, around 5:30 p.m. towards the end of her shift, plaintiff was working with a R88 reel of fiber optic cable. The R88 reel is 88 inches high and the reel contains approximately 10,000 meters of cable and weighs approximately 5,000 lbs. Plaintiff was near the end of her inspection of the fiber optic cable located on the R88 reel and was working on taping the end of the cable. To do this, plaintiff was forced to push and pull back and forth the reel so that she could reach the end of the cable to tape it and "endcap" it. As she was pushing and pulling, she "got a bad pulling sensation in [her] back." In addition to the painful sensation, plaintiff also had severe pain in her left leg. Following the painful sensation, plaintiff asked a fellow co-worker, David Eisenhour, for assistance in finishing up her work on the reel. The Full Commission finds as a fact that this occurrence constitutes a specific traumatic incident.
5. Later that night, plaintiff experienced a twitching sensation moving up and down her left leg. Plaintiff experienced pain throughout that weekend and by the next Monday, plaintiff had lost movement in her left toes and her left leg was numb from her kneecap to her toes. She scheduled an appointment with her family doctor, Dr. Bradley, on Monday, January 9, 2006.
6. Prior to plaintiff's visit with Dr. Bradley on January 9, 2006, plaintiff had presented to Dr. Bradley on January 4, 2006. Dr. Bradley testified and the Full Commission finds as a fact that on January 4, 2006 the bulk of plaintiff's symptoms were respiratory, drainage and congestion. Dr. Bradley testified that his note of January 4, 2006 does not indicate the severity of the pain that plaintiff presented with on the 9th. Dr. Bradley testified and the Full *Page 5 
Commission finds as a fact that plaintiff's pain on January 9, 2006 was more specific, had a specific neurotome involvement-the first sacral nerve on the left side with the pain radiation down the leg. Dr. Bradley suspected a ruptured disc, which subsequently did prove to be the case apparently with the neurosurgery that was later performed.
7. Plaintiff next presented to John Baltzel, PA of Carolina Neurosurgery Spine on January 10, 2006. On the January 10, 2006 medical note, Mr. Baltzel stated "[f]or the past three days, [the plaintiff] has described having persistent numbness in the same distribution distally more so than proximally." Mr. Baltzel ordered an MRI for plaintiff that was performed on Wednesday, January 11, 2006. The MRI revealed and the Full Commission finds as a fact that plaintiff had suffered a herniated disc in the L5/S1 region of her lower back.
8. Dr. Henegar of Carolina Neurosurgery Spine scheduled an L5/S1 microdiscectomy for January 25, 2006. Following the surgery, plaintiff continued to experience pain down her left side. Plaintiff had a post-operative MRI, which showed some scar formation on the left L5/S1. Following physical therapy and epidural steroid injections, plaintiff visited with Dr. Henegar again on April 20, 2006. Plaintiff was still complaining of muscle spasms in her back and pain radiating to her left leg. Dr. Henegar restricted plaintiff to no strenuous activity and kept her out of work from January through July of 2006. Plaintiff ultimately underwent a fusion of the L5/S1 on July 11, 2006.
9. Following the fusion, plaintiff was placed under work restrictions and again Dr. Henegar kept her out of work until her next visit with him in six weeks. Plaintiff next treated with Dr. Henegar on August 31, 2006. At this time, plaintiff continued to suffer from low back pain and bilateral lower extremity pain, with the left side worse than the right. Plaintiff again *Page 6 
treated with Dr. Henegar in February and March of 2007. Dr. Henegar continued to keep plaintiff out of work during this time due to the fusion and her lower back injury.
10. Plaintiff treated with Dr. Henegar on May 15, 2007 for lower back pain and left lower extremity pain. Dr. Henegar noted during his deposition and the Full Commission finds as fact that plaintiff was still unable to work in May 2007 due to her lower back injury. On July 26, 2007, plaintiff presented to Dr. Henegar for continued lower back and left lower extremity pain. At this time, plaintiff was still under restrictions due to the lumbar fusion in July of 2006. Dr. Henegar continued to keep plaintiff out of work through October 25, 2007 and through the date of his deposition of February 8, 2008. Dr. Henegar testified that plaintiff was scheduled for surgery to her thoracic spine at the T8/9 disc on February 13, 2008.
11. Dr. Henegar and Dr. Bradley opined and the Full Commission finds as a fact, that plaintiff's specific traumatic incident on January 6, 2006 more likely than not caused or precipitated plaintiff's lower back injury that led to her subsequent surgeries.
12. Plaintiff has remained out of work due to her back injury from the date of injury through the date of the hearing and continuing.
13. Plaintiff was paid a combination of sick pay and short-term disability from the date of injury through July 25, 2006. These payments were made bi-weekly. Plaintiff did not pay any portion of the premium for the short-term disability check. Plaintiff was paid long-term disability benefits beginning on July 26, 2006 through the date of the hearing and continuing.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Undersigned makes the following:
 CONCLUSIONS OF LAW *Page 7 
1. Plaintiff failed to offer expert medical evidence to prove that her exposure to the fumes and dust particles on January 26, 2005 caused her respiratory symptoms and disability. Therefore, plaintiff has failed to carry her burden of proof on the plaintiff's chemical exposure claim for I.C. No. 665673 and plaintiff's claim for benefits for this case is DENIED.
2. Plaintiff sustained an injury by specific traumatic incident on January 6, 2006 when she felt a pull and onset of pain when she was pushing and pulling back and forth a reel of fiber optical cable. N.C. Gen. Stat. § 97-2 (6).
3. Plaintiff has been totally disabled for the period of January 6, 2006 through the date of the hearing and continuing. Russell v. Lowe'sDistributing, 108 N.C. App. 762, 425 S.E.2d 454, 457 (1993).
4. Plaintiff is entitled to temporary total disability compensation at the rate of $596.00 per week for the entire period of her disability, subject to attorney's fees until plaintiff is released to return to work and finds suitable employment. N.C. Gen. Stat. § 97-29.
5. Defendants are entitled to a credit on a week-by-week basis for the short-term disability monies paid from the employer-funded plan. N.C. Gen. Stat. § 97-42; Smith v. Richardson Sports, LTD Partners d/b/aCarolina Panthers, 172 N.C. App. 200, 616 S.E.2d 245 (2005).
6. Defendants are not entitled to a credit for the sick days paid subsequent to January 6, 2006 because those sick days were due and payable to the employee as being previously earned. N.C. Gen. Stat. § 97-42; Christopher v. Cherry Hospital, 145 N.C. App. 427, 430,550 S.E.2d 256, 258 (2001).
7. Given that the plaintiff is required to reimburse the disability insurance carrier, to the extent that she receives retroactive workers' compensation benefits, defendants are not *Page 8 
entitled to a credit or offset for any long-term disability benefits that plaintiff received. N.C. Gen. Stat. § 97-42; Moore v. FederalExpress, 162 N.C. App. 292, 590 S.E.2d 461 (2004).
8. Plaintiff is entitled to all medical care that is designed to lessen her symptoms, provide a cure, or lessen her period of disability. Plaintiff is entitled to a reasonable attorney's fee of 25% of all indemnity to be paid under the terms of this Opinion and Award. N.C. Gen. Stat. § 97-90.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff, subject to the credit and attorney's fees awarded hereinafter, temporary total disability compensation at the rate of $596.00 per week for the period beginning January 6, 2006 through the date of the hearing and continuing until plaintiff is released to return to employment and plaintiff finds suitable employment.
2. Prior to deduction of the attorney's fee, defendants shall be entitled to a credit on a week-to-week basis for the short-term disability benefits paid to plaintiff.
3. Based upon plaintiff's contractual obligation to reimburse the disability insurance carrier for benefits paid, defendants are not entitled to a credit for long-term disability benefits paid plaintiff beginning July 26, 2006.
4. Defendants shall pay directly to plaintiff's counsel 25% of the net indemnity benefits awarded and shall continue to pay 25% of the indemnity benefits awarded until plaintiff is released to return to employment and plaintiff finds suitable employment. *Page 9 
5. Defendants shall pay for the medical care that has been rendered related to the lower back injury plaintiff sustained on January 6, 2006, including but not limited to the treatment rendered by Dr. Henegar of Carolina Neurosurgery and Spine, Dr. Bradley of Cherryville Family Care, Gaston Memorial Hospital, Kings Mountain Hospital and Presbyterian Hospital. Plaintiff has failed to prove that surgery scheduled to her thoracic spine at the T8/9 disc on February 13, 2008 was related to the compensable injury and thus defendants shall not be required to pay for this procedure.
6. Defendants shall continue to provide to Plaintiff such care as is required to provide a cure, lessen the period of disability, or provide relief from the symptoms. Dr. Henegar is authorized as the treating physician.
7. Defendants shall pay the costs
This the __ day of January, 2009.
 S/__________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/__________________ LAURA K. MAVRETIC COMMISSIONER
 S/__________________ CHRISTOPHER SCOTT COMMISSIONER